UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MERRIE FROST, | ) | Case No.: 1:06 CV 2649 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| THE HONORABLE MARY JANE | ) | |
| BOYLE, *et al.,* | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Pending before the court are: (1) Plaintiff Merrie Frost's ("Plaintiff's") Motion to Dismiss Certain Claims with Prejudice (ECF No. 43); (2) Defendants Judge Mary Jane Boyle ("Judge Boyle") and Judge Joseph Russo's ("Judge Russo") (collectively, "Judicial Defendants") Motion to Dismiss the Case (ECF No. 15); (3) Defendants Donna Coe, Jimmy Dimora, Tim Hagan, Charles Hannan, Peter Lawson Jones, Ken Lusnia, William Mason, and Len Munks's (collectively, "County Defendants") Motion for Judgment on the Pleadings (ECF No. 27); and (4) Plaintiff's Motion for Leave to File Memorandum on Sole Issue of Standing. (ECF No. 42.)

## I.  FACTS AND PROCEDURAL HISTORY

### A. *Davis v. Cuyahoga County Juvenile Court*

Plaintiff's Complaint arises out of a race discrimination and retaliation case in the Cuyahoga Court of Common Pleas, *Davis v. Cuyahoga County Juvenile Court,* Case No. CV-01-449252 ("Davis case").  While Plaintiff was employed as an associate at R. Jack Clapp & Associates

("Clapp law firm"), the firm served as counsel for Ms. Ruby Davis ("Davis") in her Title VII lawsuit against Cuyahoga County Juvenile Court.  Plaintiff litigated and won a jury verdict for Davis in November, 2002.  (Compl. ¶ 5.)  Judge Boyle was the presiding judge in the *Davis* case.  (Compl. ¶ 6.)

Plaintiff claims that Judge Boyle held a hearing on or about January 13, 2003, to determine the amount of attorney's fees and expenses to award to Davis, whether to award Davis reinstatement, and whether to award Davis pre-judgment and post-judgment interest. (Compl. ¶ 7.)  Plaintiff left the Clapp law firm's employment while the motion for attorney fees and expenses was pending before Judge Boyle.  Plaintiff states that Davis subsequently discharged the Clapp law firm in December, 2003 and retained Plaintiff as counsel.  (Compl. ¶ 12.)  Therefore, on March 22, 2004, the Clapp law firm filed a Motion to Withdraw as Legal Counsel for Ruby Davis.  The Clapp law firm also intervened as a third-party plaintiff by filing a Notice of Assertion of Attorney's Lien, claiming that any potential award for attorney fees and expenses in the *Davis* case belonged to the Clapp law firm, which represented Davis at trial. (County Defs.' Reply at 2, ECF No. 35.)

Plaintiff claims that, while the motions were pending before Judge Boyle, Defendants "conspired by having Defendant [Judge Boyle] to never rule on the motions." (Compl. ¶  9.) Plaintiff claims that Judge Boyle's failure to rule on these motions as of March 1, 2006, prevented Davis from being reinstated to her job and receiving her attorney's fees and other monies, which therefore prevented Plaintiff from receiving any money from the case.  (*Id.*)

### B. Settlement Agreement in January, 2006

Plaintiff alleges that Judge Boyle's alleged failure to rule on the motions provided the "opportunity for Defendants to put together an undisclosed RICO agreement which dismissed the

-2-

attorney fee award and expenses" in the *Davis* case, without the knowledge or consent of Davis or Plaintiff.  (Compl. ¶ 10.)  Plaintiff claims the agreement was signed in or around January, 2006, and provided that the Cuyahoga County Juvenile Court would pay Davis's former counsel, the Clapp law firm, certain fees and expenses to dismiss the motion for attorney's fees and expenses, which was still pending.  (Compl.  ¶ 11.)  Plaintiff alleges that attorneys Jack Clapp and Tim Ita, members of the Clapp law firm, accepted $39,000 from the defendants in the *Davis* case in settlement of the pending motion for attorney's fees and expenses.  (Comp.  ¶ 15.)

Plaintiff claims that this settlement was accomplished through a conspiracy between the Judicial and County Defendants, and that in "settling the case they have interfered and undermined the contract and the right of Plaintiff to pursue her business."  (Compl.  ¶  16.)  Judge Russo signed the agreement on behalf of the Cuyahoga County Juvenile Court, Davis's former employer, (Pl.'s Compl., Ex. 1), but Plaintiff makes no specific allegations against Judge Russo and does not mention him by name in the body of the Complaint.  Plaintiff maintains that Defendants' conduct forced her to "turn down other work because she knew that Defendants had conspired to stop all race discrimination cases against the Cuyahoga County Government."  (Compl. ¶ 20.)

### C.  Plaintiff's Representation of Davis

Plaintiff alleges that unspecified Defendants attempted to intimidate Plaintiff by filing for sanctions against her in response to the allegations of corruption in the Cuyahoga County Courts that Plaintiff made to the Ohio Supreme Court.  (Compl. ¶ 27.)  Plaintiff claims that unspecified Defendants or their agents, in or about October 2005, attempted to persuade Plaintiff to drop the *Davis* case in exchange for Defendants' agreement to drop the pending sanctions filed against Plaintiff.  (Compl. ¶ 28.)

**D. Judge Boyle's Alleged Submission of False Information to the Ohio Supreme Court and Destruction of Evidence**

Plaintiff claims that Judge Boyle submitted false information about the *Davis* case to the Ohio Supreme Court.  (*Id.* ¶ 29.)  Specifically, Plaintiff states that Judge Boyle failed to disclose in her report to that Court  that the *Davis* case was still pending and was over 36 months past the Ohio Supreme Court guidelines.  (*Id.*)  Plaintiff argues that the alleged false submission was an "attempt to cover up the delay and shows that [Judge Boyle] intentionally delayed the case and knew her conduct was wrong."  (*Id.*)  Plaintiff also claims that Judge Boyle and other unnamed Defendants destroyed documents in the *Davis* case.  (*Id.*)

**E. Claims and Request for Relief**

Based on the foregoing facts, Plaintiff alleges the Judicial and County Defendants are liable for: (1) RICO violations pursuant to 18 U.S. C. § 1964 (Compl. ¶ ¶ 1 - 42); (2) Equal Protection (Compl. ¶ ¶ 43 - 48); (3) 42 U.S.C. § 1983 (Compl. ¶ ¶ 49 - 52); (4) 42 U.S.C.§ 1985 (Compl. ¶ ¶ 53-56); (5) 42 U.S.C. § 1986 (Compl. ¶ ¶  57 - 61); (6) 42 U.S.C. § 1988 (Comp. ¶ ¶  62-63); (7) State RICO claims (Compl. ¶ ¶ 64-66); (8) Civil conspiracy (Compl. ¶ ¶ 67 - 70); (9) Tortious interference with contractual relations (Compl.  ¶ ¶ 71 - 76); (10) Fraud (Compl. ¶ ¶ 77 - 82); and (11) Defamation (Compl. ¶ ¶ 83-89).  Plaintiff asks for a permanent injunction or restraining order against all Defendants and monetary damages which include: (1) $10 million in compensatory damages; (2) treble damages according to statutory law; (3) punitive damages against each defendant individually in the amount of $30 million; (4) attorney's fees; and (5) costs.  (Compl. ¶ ¶  21-22.)

**II. PLAINTIFF'S MOTION TO DISMISS SOME CLAIMS WITHOUT PREJUDICE**

Plaintiff moved the court to dismiss the slander and defamation charges against all Defendants, and to dismiss the interference with contractual relations and the Equal Protection

-4-

claims against Judge Boyle.  The Judicial Defendants argue that Plaintiff's Motion to Dismiss should be denied because Federal Rule of Civil Procedure ("Rule") 41(a) provides for dismissal of an entire *action* rather than the dismissal of some *claims*.  Defendants argue that the "actual procedure Plaintiff should have followed to dismiss these claims would be to amend her complaint under Rule 15, deleting the desired claims."  (Judicial Defs.' Reply Mem. in Support of Mot. to Dismiss at 3, ECF No. 45.)  Judge Boyle and Judge Russo then state, "assuming this court might treat Plaintiff's motion to dismiss as a motion to amend the complaint, this should likewise be denied" because "a court need not grant leave to amend if it would be futile to do so" and "the defendants would suffer plain legal prejudice as a result."  (*Id.*)

The court notes that Defendants are correct regarding the appropriate procedure for dismissing some claims.  Specifically, the Sixth Circuit has stated that "Rule 41 does not speak to dismissal of *claims,* and an amendment pursuant to Rule 15 is the appropriate way to dispose of fewer than all claims against a defendant."  *Baker v. City of Detroit,* 217 Fed. App'x 491, 496 (6th Cir. 2007) (citing *Mgmt. Investors v. United Mine Workers of Am.,* 610 F.2d 384, 394-95 (6th Cir. 1979)).  However, the *Baker* court noted that "it is not unusual for motions styled as Rule 41 motions or motions to dismiss to be construed as Rule 15 motions for leave to amend."  *Baker,* 217 Fed. App'x 496-97 (citing *Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 518 (Fed. Cir. 1987); *Wakefield v. Northern Telecom. Inc.,* 769 F.2d 109, 114 (2d Cir. 1985)).  Here, Plaintiff's motion is styled as a motion to dismiss certain claims, and to promote the resolution of this lawsuit and judicial economy, the court

shall construe it as a Rule 15 motion for leave to amend the complaint.  Accordingly, the court grants Plaintiff's Motion to Dismiss Certain Claims and shall not analyze these claims below.

-5-

### III. JUDICIAL DEFENDANTS' RULE 12(B)(6) MOTION AND COUNTY DEFENDANTS' RULE 12(C) MOTION

The Judicial Defendants filed a Rule 12(b)(6) motion, and the County Defendants filed a Rule 12(c) motion, wherein they make similar arguments.  The court shall therefore address the Judicial Defendants and the County Defendants arguments below in Section III(D).  However, the court shall first address the Judicial Defendants' threshold arguments that: (1) this court lacks subject matter jurisdiction over the claims due to the application of the *Rooker-Feldman* doctrine; (2) Plaintiff lacks standing to pursue her claims; and (3) Judge Boyle has absolute judicial immunity.

### A. *Rooker-Feldman* Doctrine

The Judicial Defendants argue that this court lacks subject matter jurisdiction regarding the claims against Judge Boyle due to the application of the *Rooker-Feldman* doctrine.  For the foregoing reasons, the court finds this argument is not well-taken.

The Sixth Circuit recognized that the Supreme Court recently clarified the scope of the *Rooker-Feldman* doctrine.  Specifically, the *Rooker-Feldman* doctrine applies only to "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district courts' review and rejection of those judgments." *Fieger v. Ferry,* 471 F.3d 637, 640 (6th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)).  The Sixth Circuit in *McCormick v. Braverman,* 451 F.3d 382, 394 (6th Cir. 2005) explained that "the key point is that the source of the injury must be *from the state court judgment itself*; a claim alleging another source of injury is an independent claim." (Emphasis added.)  Therefore, *McCormick* held, 451 F.3d at 393, that the *Rooker-Feldman* doctrine was not applicable where the plaintiffs made claims of fraud and misrepresentation in federal district court against the attorney defendants involved in the state court case because:

[the plaintiff] does not complain of "injuries caused by the state court judgments"; she does not claim that the state court judgments, with respect to [the plaintiff's] divorce and to the order of receivership, in and of themselves violate the federal Constitution or federal law, unlike the plaintiffs in *Rooker* and in *Feldman*. Instead, Plaintiff claims that certain Defendants acted illegally and that a state statute is unconstitutionally vague and overbroad.

Similarly, like the *McCormick* plaintiff, Plaintiff does not allege that her injuries arose from the state court judgment in the *Davis* case, where Ms. Davis was the prevailing party, and that the *Davis* decision in and of itself violates the federal Constitution or federal law. Rather, Plaintiff asserts that her injuries arose from the illegal actions of the Judicial Defendants and the County Defendants as a result of the alleged "illegal RICO agreement" that allegedly occurred after the judgment in the *Davis* case and indirectly deprived Plaintiff of attorney's fees. Accordingly, the limited *Rooker-Feldman* doctrine is not applicable.

### B. Standing

The Judicial Defendants also argue that Plaintiff lacks standing to bring the claims before this court. Though the County Defendants do not make this argument, the court notes that the standing issue also applies to them. For the foregoing reasons, the court finds that Plaintiff fails to state facts that establish that she has standing to bring claims against the Judicial or County Defendants.

Standing is "the threshold question in every federal case." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). According to the Sixth Circuit and the Supreme Court, the policy rationale for the standing requirement is to "limit federal jurisdiction to actual controversies so that the judicial process is not transformed into a vehicle for the vindication of the value interests of concerned bystanders, no matter how worthy those values may be." *Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 915-16 (6th Cir. 2002) (holding

-7-

that the plaintiffs lacked standing to force the Secretary to pay funds to the state because the duty to disburse funds under the Act was owed to the state rather than the plaintiff owners.)  A plaintiff must satisfy both Article III and prudential standing requirements.  *Id.*

The Sixth Circuit has stated that to satisfy Article III's standing requirements, a plaintiff must, at a minimum, establish the following elements:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a *legally protected interest* which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a "favorable decision."

*Kardules v. City of Columbus,* 95 F.3d 1335, 1346 (6th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (emphasis added)).  Essentially, the standing question "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth,* 422 U.S. at 498-499.

A plaintiff must also satisfy three prudential standing restrictions.  First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Coyne,* 183 F.3d at 494 (citations omitted).  Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *See Valley Forge*, 454 U.S. at 474-75. Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *See id.* These additional restrictions enforce the principle that, "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F.3d at 494 (citations omitted).

-8-

Here, the heart of Plaintiff's claims is that she has standing because, as a result of Davis being illegally deprived of attorney's fees, Plaintiff was denied payment and therefore suffered financial injury.  In *Hart v. City of Detroit,* No. 99-CV-73018, 2001 U.S. Dist. LEXIS 3013, at *10- 12 (E.D. Mich. 2001), the court held that the plaintiff did not have standing to bring a forfeiture action as she lacked a viable interest in the cash seized by the police because it belonged to the plaintiff's mother, even though the plaintiff stated that her mother planned to give the cash to her.  Similarly, Plaintiff does not allege that the attorney's fee in the *Davis* case belonged to her.  Indeed, she acknowledges that the "attorney fee award specifically belonged to Davis, pursuant to Ohio law." (Compl. ¶ 13; *see also* Pl.'s Notice of Filing of Case Law Regarding the Issue of to Whom An Attorney Fee Award Belongs to, ECF No. 41.)  Plaintiff is therefore akin to a "concerned bystander" and cannot directly establish standing because she does not allege that she has a *legally protected interest* that was invaded by the Judicial and County Defendants and is concrete and particularized. Indeed, her Complaint does not "allege such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf."  Accordingly, the court finds that Plaintiff has failed to state facts that establish she has standing to bring the claims she asserts against the Judicial Defendants and the County Defendants.

### C. Absolute Judicial Immunity

The Judicial Defendants also argue that Judge Boyle has absolute immunity against Plaintiff's claims requesting monetary damages and injunctive relief.  For the foregoing reasons, the court finds that Judge Boyle's argument is well-taken with respect to the alleged failure to rule on

Davis's motions or destruction of documents in the *Davis* case, but not well-taken with respect to Judge Boyle's alleged misrepresentation to the Ohio Supreme Court regarding the status of the motions in *Davis*.

1. Money Damages

Judges are immune from money damages claims in connection with "judicial acts" unless there is a "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 362 (1978).  To determine if a certain action is a "judicial act," *i.e.,* whether it was taken in a judge's judicial capacity, "courts should focus on the 'nature' and 'function' of an act, and not the act itself." *Cooper v. Parrish,* 203 F.3d 937, 945 (6th Cir. 2000) (quoting *Mireles v. Waco,* 502 U.S. 9, 13 (1991)).  The Supreme Court in *Forrester v. White,* 484 U.S. 219, 227 (1989), stated that "paradigmatic judicial acts" are those that involve resolution of disputes "between parties who have invoked the jurisdiction of a court....", even if those actions are in error.  *See, e.g., Mireles,* 502 U.S. at 13 (holding that a judge who ordered court officers to use excessive force to drag an attorney into his courtroom was absolutely immune); *Cooper,* 203 F.3d at 945-46 (holding that a judge who improperly engaged in *ex parte* contact with prosecutors and gave them legal advice on how to improve their case was absolutely immune); *Barnes v. Winchell,* 105 F.3d 1111, 1115-22 (6th Cir. 1997)  (holding that a municipal court judge who directed two individuals to change charges in a criminal complaint and helped them prepare one or more of the complaints was absolutely immune).

If an action is a "judicial act," then judicial immunity applies to acts "performed maliciously and corruptly as well as acts performed in bad faith or with malice." *Brookings v. Clunk,* 389 F.3d at 614, 617 (6th Cir. 2004).  *See, e.g., Eades v. Sterlinske,* 810 F.2d 723, 725-26 (7th Cir. 1987), *cert.*

-10-

*denied,* 484 U.S. 847 (1987) (holding that the judge's action in deliberately altering a trial transcript, while reprehensible, was nevertheless a judicial act); *Harris v. Deveaux,* 780 F.2d 911, 915 (11th Cir. 1986) (holding that the judge's action of improperly ordering the plaintiff's arrest was a judicial act). It also applies when a judge has conspired with others to deprive a plaintiff of his property and rights. *See, e.g, Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) (holding that a conspiracy between a judge and a prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless did not pierce the immunity extended to judges and prosecutors).

However, judicial immunity does not apply when a judge performs ministerial or administrative acts, *Forrester,* 484 U.S. at 229-30, though the line between judicial acts and administrative or ministerial acts is often imprecise. As the Sixth Circuit in *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir. 1997), noted, "any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one." (citations omitted) (holding that letters to prosecutors instigating a criminal investigation was a judicial act, but statements about the plaintiff to the media were not). *Barrett* observed that, "perhaps this cautious approach derives from the Supreme Court's decision in *Forrester,* 484 U.S. 229-30, in which the Court ruled that judges do not receive immunity when acting in administrative, legislative, or executive roles." *Id.* at 255. In *Forrester,* the Supreme Court held that the state court judge did not have absolute judicial immunity from damages because his decision to demote and dismiss a probation offer was an administrative act, not a judicial act. *Id.* at 227-28. *Forrester* stated that "administrative decisions, even though they may be essential to the very functioning of the courts, have not been similarly regarded as judicial acts." *Id.*

Here, it is undisputed that Cuyahoga County Common Pleas Court had jurisdiction over Davis's case pursuant to Ohio Revised Code § 2305.01. Judge Boyle's failure to rule on the motions in *Davis* constituted a judicial act because the nature and function of ruling on motions is a "paradigmatic judicial act" involving the resolutions of disputes between parties, and Plaintiff expected to deal with Judge Boyle in her official capacity. The nature and function of Judge Boyle's alleged destruction of documents in the *Davis* case also arose in the context of resolving disputes between parties. Even taking Plaintiff's allegation as true, her claim, like those of the plaintiffs in *Eades, Harris,* and *Ashelman,* is essentially that Judge Boyle engaged in judicial acts, and that Judge Boyle performed the acts maliciously, corruptly, in bad faith, with malice, or in the context of a conspiracy. These actions , while reprehensible if true, are not outside the scope of absolute judicial immunity. Judge Boyle therefore has judicial immunity with respect to these allegations.

However, while it is admittedly a close call, the court finds that Judge Boyle's alleged action in falsely reporting the status of the *Davis* case to the Ohio Supreme Court is an administrative act. The nature of the act is administrative because it involves no judgment or discretion on the part of the judge. Regarding the function of the act, while reporting on cases to the Ohio Supreme Court may be important to the overall functioning of state courts, it does not facilitate resolutions of disputes between parties. Therefore, the court finds that Judge Boyle does not have judicial immunity with respect to Plaintiff's allegations that Judge Boyle falsely reported the status of the *Davis* case to the Supreme Court of Ohio.

<u>2. Injunctive Relief</u>

Judge Boyle is also entitled to judicial immunity from injunctive relief regarding Plaintiff's claims that Judge Boyle failed to rule on motions and destroyed documents in the *Davis* case, but

not that she falsely reported the status of the *Davis* case to the Ohio Supreme Court. The Sixth Circuit in *Massey v. Stosberg,* 136 Fed. App'x 719, 720 (6th Cir. 2005), citing 42 U.S.C. § 1983 (2003), recognized that "'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable.'" *Accord Montero v. Travis,* 171 F.3d 757, 761 (2d Cir. 1999).

As discussed above, Plaintiff's claims against Judge Boyle for failing to rule on motions and destroying documents occurred while Judge Boyle was acting in her judicial capacity, there is no allegation that Judge Boyle violated a declaratory decree, and declaratory relief is theoretically available in this case. Therefore, absolute judicial immunity bars Plaintiff's request for injunctive relief pursuant to these allegations. However, Plaintiff's allegation that Judge Boyle falsely reported the status of the *Davis* case to the Ohio Supreme Court is an administrative or ministerial, not a judicial, act. Accordingly, absolute immunity does not bar Plaintiff's request for injunctive relief with respect to this allegation.

### D. Failure to State Claims Upon Which Relief Can be Granted

As a preliminary matter, the court reiterates that Plaintiff does not have standing to bring claims against the Judicial Defendants and the County Defendants, and that Judge Boyle has absolute immunity from some, but not all, of Plaintiff's allegations. Yet even if Plaintiff did have standing and Judge Boyle lacked partial judicial immunity, the court finds, for the foregoing reasons, that Plaintiff fails to state claims upon which relief can be granted.

1. Legal Standard

*a. Rule 12(b)(6)*

-13-

Under Rule 12(b)(6), the court examines the legal sufficiency of a plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). As the Sixth Circuit noted in *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. Sept. 25, 2007), the Supreme Court in *Bell Atl. Corp. v. Twombly*, __U.S. __, 127 S. Ct. 1955 (2007) has "recently clarified" the pleading standard necessary to survive a Rule 12(b)(6) motion. Specifically, *Assn' of Cleveland Fire Fighters*, 502 F.3d at 548, explained that, even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 127 S. Ct. 1965). *Twombly* further explained that a complaint must contain facts sufficient to "state a claim that is plausible on its face." *Id.* at 1974. *Twombly* abrogated the pleading standard articulated in *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957) (that a complaint fails to state a claim when it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'), stating it has "earned its retirement," and calling it "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Id.* at 1965.

### b. Rule 12(c)

Federal Rule of Civil Procedure Rule 12(h)(2) provides that "the Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted can be raised after an answer has been filed by motion for judgment on the pleadings pursuant to Rule 12(c)." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). When the Rule 12(b)(6) defense is "raised by a Rule 12(c) motion for judgment on the pleadings, a court must apply the standard for a Rule 12(b)(6) motion." *Id.*

### 2. Plaintiff's Federal Claims

<u>a. RICO Violations Pursuant to 18 U.S. C. § 1962(c)</u>

RICO provides a cause of action for civil damages arising out of "racketeering activity," provided the plaintiff can show: (1) two or more predicate offenses; (2) the existence of an "enterprise"; (3) a nexus between the pattern of racketeering; and (4) resulting injury to business or property. *DeNune,* 288 F. Supp. 2d at 857 (citing *VeanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000)).  In order to be liable under RICO, "a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *Id.*  For the reasons stated below, the court finds that Plaintiff's Complaint lacks facts which allege that Defendants engaged in a pattern of racketeering.

The Sixth Circuit has held that fraud can constitute a "predicate act,"within the meaning of the RICO statute. *See, e.g., Vemco v. Camardella,* 23 F.3d 129 (6th Cir. 1994), *Thompson v. Passche*, 950 F.2d 306 (6th Cir. 1991).  Here, Plaintiff states that the "predicate act" was fraud.  To establish liability under RICO, though, Plaintiff needs to plead facts that the predicate acts constitute a pattern of racketeering.  Specifically, RICO "assumes there is something to a RICO pattern *beyond* the number of predicate acts involved." *Moon v. Harrison Piping Supply,* 465 F.3d 719, 724 (6ᵗʰ Cir. 2006) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238 (1989)).  In *H.J.,Inc.,* 492 U.S. at 239, the Supreme Court held that "the term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity.  It is this factor of *continuity plus relationship which combines to produce a pattern.*" *Id.*  Both continuity and relationship are required to show a pattern of racketeering.  Since the court finds that Plaintiff's Complaint does not state facts that allege "continuity," the court shall not discuss "relatedness."

As the Supreme Court stated in *H.J, Inc.,* "'[c]ontinuity' is both a closed-and-open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.  Continuity "may be established at the pleading stage by alleging acts of either closed- or open-ended racketeering activity." *Moon,* 465 F.3d 719 at 724.

A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Moon,* 465 F.3d at 724 (quoting *H.J., Inc.,* 492 U.S. at 242).  In *Moon,* the court held that the plaintiff failed to state a RICO claim because he did not allege closed-ended continuity.  The court found that, even though predicate acts occurring over a two-and-a-half year period may have constituted a "significant period of time," facts establishing a closed period of continuity were still lacking because all of the predicate acts that plaintiff alleged "were keyed to [the defendants'] *single objective* of depriving [the plaintiff] of his benefits." *Id.* at 725.  In such circumstances where a "single objective" is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id.* at 725-26 (internal quotations omitted); *see also Vemco, Inc.,* 23 F.3d at 134-35 (holding that the plaintiff failed to show closed-ended continuity because the single fraudulent scheme to misrepresent a guaranteed price, which occurred over seventeen months, was a single criminal episode, and the defendants' scheme would be over and their association would end once the scheme was accomplished); *Thompson,* 950 F.2d at 311 (holding that the single fraudulent scheme ended once the defendant seller sold all his land to the plaintiff sellers, and it therefore was "insufficiently protracted to qualify as a RICO violation").  As in the foregoing cases, Plaintiff alleges that the Judicial and County Defendants were involved in a single fraudulent scheme

with a single objective to deprive Davis (and by extension, Plaintiff) of attorney's fees.  The court finds that Plaintiff's allegations simply do not give rise to the close-ended continuity RICO pleading requirement.

Plaintiff's allegations also do not give rise to open-ended continuity.  The Supreme Court stated in *H.J., Inc.,* 492 U.S. at 242, that open-ended continuity could be pleaded through facts showing "a distinct threat of long-term racketeering activity," or by showing "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Here, Plaintiff does not allege facts showing there is a distinct threat of Defendants' fraudulent activities continuing in the future or that Defendants' fraudulent activities constitute a regular way of doing business, *i.e.,* "usual; normal; customary." *Moon,* 465 F.3d at 727 (citing *Random House Unabridged Dictionary* 1624 (2d ed. 1993)).  Like the plaintiff in *Moon,* Plaintiff here has failed to plead facts that support that Defendants' alleged actions were usual, normal, or customary, much less that Defendants' actions constituted a "systematic threat of ongoing fraud." *Id.* at 727.

For the above-stated reasons, even taking the well-pled facts as true, Plaintiff's cause of action fails to state a claim upon which relief can be granted because Plaintiff has not alleged facts showing that Defendants engaged in a "pattern of racketeering," which is required to set forth a RICO claim.  Accordingly, the Judicial Defendants' and County Defendants' Motions are granted on this ground.

<u>b. Equal Protection</u>

Plaintiff alleges that Defendants' conduct violated the Equal Protection Clause by "denying her the right to pursue her livelihood" and that she was treated differently because she "pursued

litigation against the government." (Compl. ¶¶ 46-47.) For the foregoing reasons, the court finds that Plaintiff fails to state an Equal Protection claim as a matter of law.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the law." The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill,* 521 U.S. 793, 799 (1997). States cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one different from another similarly situated without any rational basis for the difference. *Id.*

Here, Plaintiff's Complaint does not allege that Defendants have burdened a fundamental right, which she was exercising, targeted a suspect class, of which she is a part, or treated her any differently than others similarly situated without a rational basis. First, the Constitution does not create fundamental interests in particular types of employment. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313 (1976). Indeed, the Third, Fifth, and Ninth Circuits have held that "the right to practice law is not a fundamental right for purposes of due process or equal protection analysis." *Edelstein v. Wilentz,* 812 F.2d 128, 132 (3d Cir. 2987) (citing *In the Matter of Roberts,* 682 F.2d 105, 108 n.3 (3d Cir. 1982) (per curiam), *Nordgren v. Hafter,* 789 F.2d 334, 338 n.2 (5th Cir.), *cert denied,* 479 U.S. 850 (1986); *Lupert v. California State Bar,* 761 F.2d 1327 n.2 (9th Cir.), *cert denied,* 474 U.S. 916 (1985). Plaintiff's allegation that her "livelihood" as a civil rights litigator was affected by Defendants' actions therefore is not sufficient to show that Defendant burdened a fundamental right. Secondly, Plaintiff does not allege facts that she is a member of a suspect class. Finally, Plaintiff claims she was "treated differently," but she states no instances where the Defendants allowed others, but not Plaintiff, to pursue litigation against the government.

-18-

For the above-stated reasons, even taking the well-pled facts as true, Plaintiff's Equal Protection claim fails to state a claim upon which relief can be granted.  Accordingly, the Judicial Defendants' and County Defendants' Motions are granted on this ground.

### c. § 1983

Plaintiff's § 1983 claim asserts that Defendants, under color of law, "violated the rights of plaintiff under the Federal and State constitution; and the Federal and Ohio State statutes/laws."(Compl. 51-52.)  For the foregoing reason, Plaintiff fails to state a § 1983 claim as a matter of law.

The purpose of § 1983 is "to deter state actors from using the badge of authority to deprive individuals of their *federally* guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole,* 504 U.S. 158, 161 (1992) (emphasis added).  A defendant must therefore deprive a plaintiff of a *federally* protected right in order for the plaintiff to state a 1983 claim, since the statute does not address official conduct that violates only state law.  *See, e.g., Baker v. McCollum,* 443 U.S. 137, 146 (U.S. 1979); *Paul v. Davis,* 424 U.S. 693, 697 (1976).  Section 1983 also does not address state constitutional violations.  *Schieb v. Humane Soc. of Huron Valley,* 582 F. Supp. 717, 725 (E.D. Mich. 1984) (citing *Smith v. Sullivan,* 611 F.2d 1039, 1045 (5th Cir. 1980)).  A plaintiff must therefore plead two essential elements to state a claim under 1983: (1) that the defendant deprived the plaintiff of a right secured by the U.S. Constitution and the laws of the United States; and (2) the deprivation occurred under the color of law.  *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1244 (6th Cir. 1989).

Here, to the extent that Plaintiff relies on Defendants depriving Plaintiff rights guaranteed by the Ohio Constitution or Ohio statutes to buttress her § 1983 claim, her § 1983 claims fail as a

matter of law.  Moreover, as discussed above, Plaintiff fails to state a claim that Defendants violated RICO or deprived her of her right to Equal Protection under the law.  Therefore, since Plaintiff has failed to plead that Defendants deprived her of a right secured by the U.S. Constitution or the laws of the United States, Plaintiff fails to state a claim under § 1983 as a matter of law.  Accordingly, the court grants the Judicial Defendants' and County Defendants' Motions on this ground.

### d. §§ 1985 and 1986

### *i. § 1985*

Plaintiff claims that Defendants violated § 1985 by "conspiring to deny African Americans employed by Cuyahoga County their rights under the law" by "stop[ping] plaintiff from suing for the rights of African Americans who are employed by Cuyahoga County." (Compl. Para 55, 56.) While Plaintiff does not specify what subsections of § 1985 Defendants allegedly violated, the second clause of § 1985(2) and § 1985(3) could be applicable but, for the foregoing reasons, Plaintiff fails to state a claim under either subsection.[1]

The second clause of  § 1985(2) applies to conspiracies to obstruct justice in state court, and § 1985(3) applies to private conspiracies.  Both subsections require that the alleged discrimination must be based on race or membership in another class comprising "discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir. 1991); *see also Dallas,* 137 Fed. App'x at 752.  In *Dallas,* 137 Fed. App'x at 752, the court held that "[f]ailure to allege membership in a protected class, and discrimination based upon such

---

[1]     The first part of § 1985(2) prohibits conspiracies which interfere with the administration of justice in federal courts, and it is therefore not applicable here. *Kush v. Rutledge,* 460 U.S. 719 (1983).

-20-

membership, requires dismissal of [the plaintiff's] 1985(3) claim." The court also noted that, "since [the plaintiffs] do not allege membership in a protected class and discrimination based on such membership they do not have a valid claim under 1985(2)." *Id.* at n.5. Additionally, conspiracy claims under § 1985, like § 1983, must be pled with specificity. *Dallas v. Holmes,* 137 Fed. App'x 746, 752 (6th Cir. 2005).

Here, Plaintiff does not allege that she suffered adverse treatment based on her race. Rather, she alleges that she was prevented from helping others assert race discrimination claims against the Cuyahoga County government. As a result of her failure to allege that she suffered adverse treatment based upon her race, Plaintiff, like the plaintiff in *Dallas,* fails to state a claim under § 1985(2) or § 1985(3) as a matter of law. Additionally, Plaintiff makes conclusory statements that a conspiracy existed, fails to articulate specific facts to support there was a conspiracy, and does not allege that any of Defendants acted in concert. Accordingly, even taking the well-pled facts as true, Plaintiff's cause of action for a § 1985 violation fails to state a claim upon which relief can be granted.

### ii. *§ 1986*

Claims under Section 1986 are "directed at those who neglect to prevent wrongful acts done pursuant to a 1985 conspiracy." *Blount v. D. Canale Vevs., Inc.,* No. 02-2813-V, 2003 U.S. Dist. LEXIS 14074, at *18 (W.D. Tenn. 2003). Therefore, liability under § 1986 is derivative of § 1985 liability. *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989, 994 (6th Cir. 1994). As discussed above, Plaintiff has failed to state a claim under §1985, and she therefore fails to state a claim under § 1986 as a matter of law. Accordingly, the court grants Defendants' Motions.

### e. § 1988

Plaintiff asserts a claim under 1988, alleging that, "all defendants' conduct was done under

color or law and therefore attorney fees and costs are available under this statute." (Compl. ¶ 63.) Section 1988(2) allows the court, in its discretion, to award reasonable attorney's fees to the prevailing party in an action to enforce a provision of § 1983, § 1985, or § 1986.   Significantly, Section 1988 "does not create an independent federal cause of action for the violation of federal civil rights." *Stagemeyer v. County of Dawson,* 192 F. Supp. 2d 998, 1006 (D. Neb. 2002) (citing *Moor v. County of Alameda*, 411 U.S. 693, 702-03 & 704 n.17 (1973) (collecting cases holding that § 1988 does not independently create federal cause of action for violation of federal civil rights); *Sarmiento v. Texas Bd. of Veterinary Med. Examiners*, 939 F.2d 1242, 1245 n.4 (5th Cir. 1991) (§ 1988 does not create independent federal cause of action, but is essentially procedural statute); *Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988) (§ 1988 defines procedures pursuant to which remedies may be sought in civil rights actions; it does not create independent cause of action); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 n.1 (11th Cir. 1981) (same), *cert. denied*, 456 U.S. 979 (1982)).   As a result, the *Stagemeyer* court dismissed the plaintiff's Section 1988 claims.  Like the plaintiff in *Stagemeyer,* Plaintiff has asserted a § 1988 claim, which does not create an independent federal cause of action as a matter of law.  Accordingly, the court grants the Judicial Defendants' and County Defendants' Motions.

### 3. Plaintiff's State Claims

Plaintiff also alleges the following state law claims: (1) state RICO; (2) civil conspiracy; (3) tortious interference with contractual relations; and (4) fraud.[2]  This court had federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.  Section 1367(c)(3) provides

---

[2]    As noted above, the defamation claim has been dismissed against the Judicial and County Defendants.

that "the district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."  Here, the court has dismissed all Plaintiff's federal claims.  The court therefore exercises its discretion to decline to exercise supplemental jurisdiction over Plaintiff's state claims.

### IV.  MOTION TO ADDRESS STANDING

Defendants Judge Boyle and Judge Russo clearly raised the issue of standing in its Motion to Dismiss.  Plaintiff had ample opportunity to address the issue of standing in her Opposition to Judge Boyle and Judge Russo's Motion to Dismiss, yet Plaintiff failed to do so.  The court believes it has the briefing necessary to address the issue of standing, and that Plaintiff's Motion would be unavailing and simply prolong this litigation.  Accordingly, this court denies Plaintiff's Motion.

### V. CONCLUSION

For the reasons stated above, the court grants Plaintiff's Motion to Dismiss Certain Claims Without Prejudice (ECF No. 43), grants Defendants' Judge Boyle and Judge Russo's Motion to Dismiss the Case (ECF No. 15), grants Defendants   Donna Coe, Jimmy Dimora, Tim Hagan, Charles Hannan, Peter Lawson Jones, Ken Lusnia, William Mason, and Len Munks's Motion for Judgment on the Pleadings (ECF No. 27)**,** and denies Plaintiff's Motion for Leave to File Memorandum on Sole Issue of Standing (ECF No. 42).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE


March 4, 2008